**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 14-cv-01243-CMA-KMT
(Consolidated for all purposes with
Civil Action No. 14-cv-1402-CMA-KMT)

UNITED FOOD AND COMMERCIAL WORKERS
UNION AND PARTICIPATING FOOD INDUSTRY
EMPLOYERS TRI-STATE PENSION FUND,
Individually and on behalf of all others similarly situated,

Plaintiff,

v.

ADVANCED EMISSIONS SOLUTIONS, INC.,
MICHAEL D. DURHAM,
MARK H. MCKINNIES,
C. JEAN BUSTARD,
SHARON M. SJOSTROM,
CHRISTINE B. AMRHEIN,
and L. HEATH SAMPSON,

Defendants.
_____

**LEAD PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM OF LAW IN
SUPPORT OF FINAL APPROVAL OF SETTLEMENT**
_____

Lead Plaintiff, the United Food and Commercial Workers Union and Participating Food Industry Employers Tri-State Pension Fund ("Plaintiff"), on behalf of itself and the Settlement Class certified in this case, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and this Court's Order dated October 13, 2016 granting preliminary approval of the settlement ("Settlement") reached with Defendants, Advanced Emissions Solutions, Inc. (together with its predecessor-in-interest, ADA-ES, Inc.,

("ADES")), Michael D. Durham ("Durham"), Mark H. McKinnies ("McKinnies"), C. Jean Bustard, Sharon M. Sjostrom, Christine B. Amrhein, and L. Heath Sampson ("Sampson") (together with ADES, "Defendants"), hereby respectfully submits this Unopposed Motion and Memorandum of Law in Support of Final Approval of the Settlement.[1] As explained fully below, the Settlement is fair, reasonable and adequate under all of the circumstances.

## I.   INTRODUCTION

Plaintiff seeks approval of the proposed Settlement of its claims against Defendants for: (1) violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§78j(b), and Rule 10b-5 promulgated thereunder by the United States Securities and Exchange Commission ("SEC"), 17 C.F.R. § 240.10b-5; and (2) Section 20(a) of the Exchange Act, 15 U.S.C. § 78t. Plaintiff's claims are brought on behalf of itself and the Settlement Class consisting of all persons or entities that purchased and/or otherwise acquired ADES common stock between May 12, 2011, and January 29, 2015 (the "Class Period").

The Settlement resulted from extensive arm's-length negotiations between the Parties.[2] Plaintiff and Lead Counsel were well informed about the strengths and

---

[1] Although Defendants do not oppose this Motion, they do not join in all of the statements contained in this Motion.

[2] Capitalized terms used herein have the same meaning as defined in the Settlement Agreement. This Motion is supported by the Declaration of Laurie Rubinow ("Rubinow Decl." or "R.D."), which is attached as Exhibit "A" to Lead Plaintiff's Unopposed Motion and Memorandum of Law in Support of an Award of Attorneys' Fees and Reimbursement of Litigation Expenses being filed herewith.

weaknesses of the case from their extensive investigations, motion practice, consultation and discussions with accounting, damages and market efficiency experts, and consideration of all arguments presented.

The Settlement satisfies the requirements for final approval and recovers $3.95 million in cash, which significantly exceeds historical median securities class settlement recoveries for actions claiming similar aggregate damages.  Moreover, the recovery is especially favorable and substantial in light of ADES's financial circumstances at the time that the Settlement was reached.[3] In sum, the Settlement is both fair and reasonable considering the sizeable recovery to the Class and the risks and costs attendant to further litigation.

## II.   SUMMARY OF FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

Plaintiff alleges that beginning on May 12, 2011, ADES, Durham (ADES's former Chief Executive Officer), and McKinnies (ADES's former Chief Financial Officer), violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder by making false and misleading statements in press releases, conference calls, and filings with the SEC, *inter alia*, that: (a) prematurely recognized revenue from its emission control ("EC") segment, one of ADES's three main businesses; (b) inflated ADES's revenues and financial results; and (c) falsely reported ADES's compliance with Generally Accepted Accounting Principles ("GAAP") and that it had an adequate and

---

[3] ADES's financial circumstances have improved significantly since the Settlement was reached but, of course, Lead Plaintiff had no basis to predict whether the Company's declining cash position would reverse (as it has over the past six months), or if ADES would be able to fulfill its loan covenants (which it has), much less whether ADES's currently improving financial condition will continue.

effective system of internal controls.[4]

Plaintiff also alleges that the falsity of the statements was gradually revealed through a series of partial disclosures starting March 13, 2014, when ADES announced a delay of its 2013 fourth quarter and fiscal year-end financial results, and ending on January 29, 2015, when it became public that ADES's auditor, KPMG LLP ("KPMG"), had resigned.[5] During this time, ADES's share price dropped from $27.11 on March 12, 2014, the day before the first partial disclosure, to $9.40 on February 2, 2015, the first market day after KPMG's resignation on January 29, 2015.[6]

On February 19, 2015, the Court consolidated the Action with another similar case and appointed Plaintiff as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 ("PSLRA"). [Dkt. No. 29.] Plaintiff filed a Consolidated Class Action Complaint ("CAC") on April 20, 2015. [Dkt. No. 35.] Defendants moved to dismiss the CAC on June 19, 2015 [Dkt. No. 36], which was fully briefed by the Parties on July 16, 2015. [Dkt. Nos. 36-42.]

Before the Court issued any ruling on the Motion to Dismiss and after ADES filed the Restatements on February 29, 2016, the Parties agreed to mediate the Action and moved for a stay on March 7, 2016, which the Court granted on March 8, 2016. [Dkt.

---

[4]The remaining Defendants, along with McKinnies and Durham, are alleged to be liable as "control persons" under Section 20(a) of the Exchange Act.

[5]During the interim, Plaintiff alleges that ADES continued to issue statements that were false and misleading. ADES finally filed its restated financial statements on February 29, 2016 (the "Restatements").

[6]Plaintiff also alleges, based upon the analysis of accounting experts, that ADES substantially departed from recognized accounting standards, methodologies, and oversight mandated throughout the industry and by GAAP, and supported these allegations through a number of confidential witnesses.

Nos. 54-55.]  To facilitate the mediation and settlement discussions, on May 16, 2016, Plaintiff filed the operative Second Amended Consolidated Class Action Complaint ("SCAC"), adding new scienter allegations from Plaintiff's ongoing investigation and consultation with accounting and causation experts.  [Dkt. Nos. 58-59.]  The Parties reached agreement on settlement terms at their May 24, 2016 mediation, and promptly notified the Court of this development and that the Parties would seek preliminary approval of the Settlement. [Dkt. No. 61.]  On October 13, 2016, the Court granted preliminary approval of the Settlement and preliminary appointed Lead Plaintiff as Class representative for the Class, Shepherd Finkelman Miller & Shah, LLP ("SFMS") as Lead Counsel and Edgar Law Firm, LLC ("Edgar Law") as Liaison Counsel for the Class, and appointed Strategic Claims Services as the Claims Administrator. [Dkt. No. 64.]

### III.     STANDARD FOR FINAL APPROVAL

In reviewing Plaintiff's request to approve the Settlement, the Court must determine, *inter alia*, that it is "fair, adequate and reasonable." Fed. R. Civ. P. 23(e)(2). *See also Martinez v. Maketa*, No. 10-cv-02242, 2011 WL 2222129, at *2 (D. Colo. June 7, 2011). "The court has broad discretion in deciding whether to grant approval of a class action settlement." *Ashley v. Reg'l Transp. Dist. & Amalgamated Transit Union Div. 1001 Pension Fund Trust*, No. 05-cv-01567, 2008 WL 384579, at *4 (D. Colo. Feb. 11, 2008) (citing *Jones*, 741 F.2d at 324). "In exercising its discretion, the trial court must approve the settlement if it is fair and reasonable." *Id.* (citations omitted). However, "[i]n making the determination whether to approve a class action settlement, the court should "not decide the merits of the case or resolve unsettled legal questions." *Id*. (citing *Carson v. Am. Brands, Inc*., 450 U.S. 79, 88 n.14 (1981)); *see also Childs v. Unified Life Ins. Co.*, No. 10-cv-23, 2011 WL 6016486 (N.D. Okla. Dec. 2, 2011). "In a case where

experienced counsel represent the class, the Court 'absent fraud, collusion, or the like, should hesitate to substitute its own judgment for that of counsel,' and the 'trial court is entitled to rely upon the judgment of experienced counsel for the parties.'" *Williams v. Sprint/United Mgmt. Co.*, No. 03-cv-2200, 2007 WL 2694029, at *4 (D. Kan. Sept. 11, 2007) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)).

## IV.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

Public policy favors the settlement of civil cases, especially complex class actions like this Action. *See Newberg & Conte*, NEWBERG ON CLASS ACTIONS § 11.41 (3d ed. 1992) ("[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits."); *City P'ship Co. v. IR-TCI Partners V, L.P.*, 252 F. Supp. 2d 1114, 1121 (D. Colo. 2003) ("recogniz[ing] the public policy favoring voluntary settlement of disputes"); *Gambrell v. Weber Carpet, Inc*., No. 10-cv-2131, 2012 WL 162403, at *2 (D. Kan. Jan. 19, 2012) ("If the settlement reflects a reasonable compromise over issues ... that are actually in dispute, the Court may approve the settlement to promote the policy of encouraging settlement of litigation.") (citation omitted).  Here, the Settlement provides for Defendants to pay $3.95 million in non-reversionary funds to a common fund.  The common fund will be distributed to the Class in accordance with the Plan of Allocation, discussed fully below, after payment of attorneys' fees and costs.

This Action has been pending for over two years, and the Parties have thoroughly briefed and explored the issues. Indeed, by the time the Settlement was reached, Plaintiff had: (1) conducted extensive and ongoing investigations which included, among many other things, interviewing many confidential witnesses (including a former high-ranking employee who was a founding member of ADES); (2) fully

considered and briefed a response to Defendants' Motion to Dismiss; (3) amended the CAC to include supplemental information gathered during the pendency of the Action and the Restatements; and (4) consulted with accounting, causation and damages experts.

### A. The Settlement Satisfies the Tenth Circuit's Four-Pronged "Fairness" Test

Under Fed. R. Civ. P. 23(e)(2), a class action settlement must be "fair, reasonable and adequate." In the Tenth Circuit, the following factors are analyzed in determining whether this standard is met: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) the judgment of the parties that the settlement is fair and reasonable; (3) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; and (4) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation." *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002); *Rhodes v. Olson Associates, P.C.*, 308 F.R.D. 664, 667 (D. Colo. 2015); *see also Martinez*, 2011 WL 2222129, at *2 (citing *Jones,* 741 F.2d at 324); *In re Qwest Commuc'ns. Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1133, 1137 (D. Colo. 2006) (Blackburn, J.) (citing *Rutter & Wilbanks Corp. v Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002)).

#### 1. The Settlement Was Fairly and Honestly Negotiated

With respect to this first factor, the Court is required to "ensure that the agreement is not illegal, a product of collusion, or against the public interest." *Ashley*, 2008 WL 384579, at *5 (citation omitted). A settlement is considered to be fairly and honestly negotiated when reached after arm's-length negotiations by experienced counsel. *See Rhodes*, 308 F.R.D. at 667 (finding this factor satisfied where there was

no indication "the settlement was the product of collusion" and where "the parties 'vigorously advocated their respective positions throughout the pendency of the case.'") (citation omitted). The negotiations here, which included the formal and informal exchange of factual information and the full and frank discussion of the Parties' respective claims and defenses, including the presentation and discussion of complex legal issues and involved each side expending substantial time and expense consulting with experts. The result was a settlement that is well considered and inherently fair and reasonable. As reflected in SFMS's firm resume accompanying the Rubinow Decl., Lead Counsel are qualified, experienced attorneys with broad-based, multi-jurisdictional experience in complex class action litigation, including securities class actions. With such experience and knowledge, Lead Counsel was able to effectively and efficiently analyze the evidence in order to assess how the particular facts here weigh on the strengths and weaknesses of Plaintiff's claims. This weighs heavily in favor of Court approval.

In addition, the Settlement was agreed upon only after the formal mediation session presided over by the respected mediator, Jed D. Melnick, who has significant experience mediating complex class actions. This also weighs heavily in favor of Court approval. *See e.g. Lucken Family L.P., LLP v. Ultra Resources, Inc.*, No. 09-cv-01543-REB, 2010 WL 2650037, at *3 (D. Colo. June 30, 2010) (Blackburn, J.). Finally as discussed herein, the measure of relief afforded to the Class, particularly in light of all the circumstances, further attests to the fact that this is not a collusive Settlement.

### 2. The Judgment of the Parties that the Settlement is Fair and Reasonable

Pursuant to the Tenth Circuit's fairness test, the Court must examine the judgment of the Parties as to the fairness and reasonableness of the Settlement. "Obviously, it is the judgment of Class Counsel, who specialize in this type of litigation, that the settlement is fair and reasonable. That judgment is entitled to some weight in considering this factor." *In re Qwest Commuc'ns.*, 625 F. Supp. 2d at 1138. Lead Counsel are experienced in complex class action litigation and, specifically, in securities class action litigation and are well-positioned to evaluate the strengths and weaknesses of the case and to evaluate the Settlement. Based on that experience, Lead Counsel strongly believe that the Settlement is fair and reasonable and provides substantial benefit to the Class.

### 3. Questions of Law and Fact Exist, Placing the Ultimate Outcome of the Litigation in Doubt

This Circuit's "fairness" test also requires an examination of whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt. The presence of such doubt makes settlement more favorable because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation. *In re Qwest Commuc'ns.*, 625 F. Supp. 2d at 1138; *see also Ashley*, 2008 WL 384579, at *6. It is clear here that there are serious questions of law and fact that exist such that they could significantly impact this case if it were litigated. For example, in their Motion to Dismiss, Defendants argue that there are insufficient allegations to overcome the PSLRA requirement that a securities fraud plaintiff "plead with particularity facts that give rise to a 'strong' -- *i.e.*, a powerful or

cogent -- inference" of fraudulent intent, asserting that ADES's accounting errors were mere "mistakes" that do not rise to that standard. [Dkt. No. 36, at 6] (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 310 (2007)). Although Plaintiff believes the facts to be sufficiently compelling to overcome that demanding requirement, there is no guarantee that the Court (on the pending Motion to Dismiss or a motion for summary judgment) or the factfinder would find Plaintiff's arguments persuasive. Moreover, Plaintiff still would need to prove the other elements of Section 10(b)–(1) material misrepresentation(s); (2) in connection with the purchase or sale of securities; (3) reliance; and (4) damages–to establish liability. *See Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1095 (10th Cir. 2003). Establishing these elements would likely involve other complex issues. *See, e.g.*, *Dura Pharms. Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (plaintiff can only recover actual out-of-pocket losses, which plaintiff must prove were proximately caused by disclosure of alleged fraud); *Halliburton Co. v. Erica P. John Funds, Inc.*, 134 S. Ct. 2398, 2414-15 (2014) (defendant can rebut fraud-on-the-market class reliance). And, a contested class certification motion here may have its own "serious issues of law and fact." *See, e.g.*, *Bennett v. Sprint Nextel Corp.*, No. 09-2122-EFM, 2013 WL 1197124, at *1 (D. Kan. Mar. 25, 2013).

While Plaintiff believes it would ultimately succeed in the Litigation, there is no assurance of the same.  Settlement at this time, in light of these uncertainties, is fair to the Class and is unquestionably the most prudent course of action.

        4.        <u>The Value of the Immediate Recovery Outweighs the Possibility of Future Relief After Protracted and Expensive Litigation</u>

The principal reason for the Settlement is the significant present benefit that it provides to the Class. This benefit must be weighed against the risk that the Class would receive little or no recovery had Plaintiff elected to continue litigating. As discussed above, there were considerable risks in continuing to litigate this Action. Securities fraud cases like this Action are notoriously complex and difficult to prove, even more so in a class context. Here, the proposed Settlement will recover $3.95 million, approximately 6.6% of Plaintiff's damages expert's most aggressive possible estimate of aggregate damages ($60.52 million). Defendants vigorously disagree with Plaintiff's estimate of damages as being unreasonably high. The historical median of settlement values as a percentage of investor losses of $50-$99 million is 4.5%. (*See* Dkt. 63-8.) As such, the proposed Settlement is significantly higher than comparable securities class action settlement recovered – by at least over 40% and much more if one assumes Defendants' estimate of possible damages is correct.

In addition, at the time the Settlement was reached, Plaintiff had significant concerns as to whether the amount of any successful judgment could be satisfied. (Dkt. 63-1, ¶ 7; *see also In re Thornburg Mortgage, Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1243 (D.N.M. 2012) (approving settlement where "there is no guarantee that there will be funds available to satisfy any jury verdict that might be returned in the class' favor").)

Thus, by settling the Action now, Plaintiff and the Class can share in a significant, all-cash compensation and avoid the risk that continued litigation may result in a smaller or no recovery at all, even if they are ultimately successful on the merits.

### B.     The Plan of Allocation Should Be Approved

A plan of allocation warrants approval where, as here, the distribution of funds is "fair and reasonable." *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1262 (D. Kan. 2006). "Allocation formulas are recognized as an appropriate means to reflect the comparative strengths and values of different categories of the claim. An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Lucas*, 234 F.R.D. at 695 (internal citations and ellipses omitted); *see also Sprint Corp. ERISA Litig.*, 443 F. Supp. at 1262. As a general rule, a plan of allocation is reasonable if it reimburses class members based on the type and extent of their injuries. *Id.*; *see also In re Oracle Sec. Litig.*, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994) ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable. It is also reasonable to allocate more of the settlement to class members with stronger claims on the merits.").

Here, the proposed Plan of Allocation, which was developed by Plaintiff's damages expert in close consultation with Lead Counsel and disseminated with the Notice, provides a fair and reasonable method to allocate the Settlement Fund among Settlement Class members who submit valid Claim Forms. Under the Plan of Allocation, "Recognized Losses" will be calculated for those shares of ADES common stock purchased or otherwise acquired during the Class Period. An Authorized Claimant's Recognized Loss will be based upon the particular disclosure date(s) on which the Class Member held ADES stock for those shares purchased or acquired during the Class Period. The sum of the Recognized Losses for all of a Claimant's purchases or acquisitions of ADES common stock during the Class Period is the Claimant's Claim

and the Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Claims.  Lead Counsel submit that the Plan of Allocation fairly and rationally allocates the proceeds of the Settlement Fund among Settlement Class Members based on the losses they suffered on transactions in ADES common stock attributable to the conduct alleged. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004) ("When formulated by competent and experienced class counsel, an allocation plan need have only a 'reasonable, rational' basis."). Accordingly, for all of the reasons set forth herein, the Plan of Allocation is fair and reasonable, and should be granted final approval for the purpose of administering the Settlement.

### C. Dissemination of the Notice Met The Requirements of Rule 23

Notice of the Settlement, in the form approved by the Court's Preliminary Approval Order, was disseminated to members of the Class by both electronic and first-class mail, using the services of Strategic Claims Services ("SCS"), a highly respected class action settlement administrator. *See* Declaration of Josephine Bravata ("Bravata Decl." or "B.D."), which is attached as Exhibit "A," at ¶¶ 2, 3. On or before November 3, 2016, SCS disseminated the Settlement Notice describing the Settlement terms, the Plan of Allocation, the attorneys' fee, expense, and reimbursement award requests, and the Final Approval Hearing date to 10,296 potential Class members. Bravata Decl. at ¶ 5. Members of the Class were informed that they had the right to exclude themselves from the Class by serving written notice by January 20, 2017. They were also informed that they had the right to object to the Settlement by filing and serving a written statement by January 20, 2017. Bravata Decl. at ¶ 4, Ex. A.

Pursuant to the Court's Preliminary Approval Order, the Summary Notice was also published in *Investor's Business Daily* and electronically on *Globe Newswire*. *See id.* at ¶ 8. SCS also sent Depository Trust Company ("DTC") the Notice and Claim Form for DTC to publish on the Legal Notice System ("LENS"). LENS provides DTC participants the ability to search and download legal notices, as well as receive email alerts based on particular notices or particular CUSIPs once the legal notice is posted. *See id.* at ¶ 6. Finally, the Notice and Claim Form, Summary Notice, Stipulation and Agreement of Settlement, the CAC and the SAC were made available to the public at SCS's website, www.strategicclaims.net/ADES, on October 27, 2016, and are still available for viewing. *See id.* at ¶ 4.

This notice procedure, developed in conjunction with SCS, was tailored to reach Class Members. The Notice explains the Litigation, Settlement, Plan of Allocation, the attorney fee and expense request, as well as the rights and options of Settlement Class Members. The Notice also explains how to obtain additional information regarding any aspect of the Settlement or Litigation. The published Notice clearly and concisely provides information concerning the Settlement and complies with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process and is similar to the procedures approved in other cases. *See Miller v. Republic Nat. Life Ins. Co.*, 559 F.2d 426, 429 (5th Cir. 1077); *see also In re Equity Funding Corp. of Am. Sec. Litig.*, 603 F.2d 1353, 1361 (9th Cir. 1979) (notice sufficient where it informed class members of the subject matter of the litigation, the terms of the proposed settlement and the proposed plan of allocation of the settlement proceeds); *Reynolds v. NFL*, 584 F.2d

280, 285 (8th Cir. 1978) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

The response to the Settlement Notice has, to date, been universally positive. SCS disseminated the Settlement Notice to 10,296 Class members and, as of the date of this filing, has not received any requests for exclusion or objections to the Settlement. Bravata Decl. at ¶¶ 10, 11.

### D. Certification of the Settlement Class Under Fed. R. Civ. P. 23 Is Appropriate

This Court should certify the Settlement Class for final approval, as it did in response to Plaintiff's Unopposed Motion for Preliminary Approval. (Dkt. 63.) As discussed therein, certification is unquestionably proper and there has been no change in circumstances that would compel the Court to reach a different conclusion than it did in preliminarily approving the Settlement Class.

### IV. CONCLUSION

For the reasons set forth above, Plaintiff respectfully submits that the Unopposed Motion for Final Approval of Settlement should be granted.[7]

---

[7] A proposed Final Approval Order and Judgment is attached as Exhibit "B."

Dated: January 6, 2017						Respectfully submitted,

/s/ James E. Miller
James E. Miller
Laurie Rubinow
Melissa He
SHEPHERD, FINKELMAN, MILLER
  & SHAH, LLP
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
Facsimile: (866) 300-7367
Email: jmiller@sfmslaw.com
       lrubinow@sfmslaw.com
       mhe@sfmslaw.com

Nathan Zipperian
SHEPHERD, FINKELMAN, MILLER
  & SHAH, LLP
1625 N. Commerce Pkwy, Suite 320
Fort Lauderdale, FL 33326
Telephone: (954) 515-0123
Facsimile: (866) 300-7367
Email: nzipperian@sfmslaw.com

Kolin C. Tang
Chiharu G. Sekino
SHEPHERD, FINKELMAN, MILLER
  & SHAH, LLP
401 West A Street, Suite 2550
San Diego, CA 92101
Telephone: (619) 235-2416
Facsimile: (866) 300-7367
Email: ktang@sfmslaw.com
       csekino@sfmslaw.com

David W. Edgar (Bar No. 41956)
EDGAR LAW FIRM, LLC
The Spectrum Building
1580 Lincoln Street, Ste. 1100
Denver, CO 80203
Telephone: (720) 529-0505
Facsimile: (303) 486-0001
Email: dwe@edgarlawfirm.com

***Attorneys for Lead Plaintiff, The United Food and Commercial Workers Union and Participating Food Industry Employers Tri-State Pension Fund***

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2017, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

/s/  Laurie Rubinow
Laurie Rubinow
Shepherd Finkelman Miller
 & Shah, LLP